UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERGENT TECHS, LLC,<br><br>Petitioner,<br><br>v.<br><br>TRANSATLANTIC LINES, LLC,<br><br>Respondent. | Case No.: 16-CV-1140 JLS (JLB)<br><br>**ORDER:**<br>**(1) GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION; AND**<br>**(2) DENYING AS MOOT MOTION TO COMPEL ARBITRATION** |

Presently before the Court is Petitioner Amergent Techs, LLC's ("Amergent") Motion to Compel Arbitration ("Mot. to Compel," ECF No. 12), as well as Respondent TransAtlantic Lines, LLC's ("TAL") response in opposition to, ("Compel Opp'n," ECF No. 15), and Amergent's reply in support of, ("Compel Reply," ECF No. 17), Amergent's Motion to Compel. Also before the Court is TAL's Motion to Dismiss Petition to Compel Arbitration for Lack of Personal Jurisdiction, ("MTD," ECF No. 13), as well as Amergent's response in opposition to, ("MTD Opp'n," ECF No. 14), and TAL's reply in support of, ("MTD Reply," ECF No. 18), TAL's Motion to Dismiss. The Court vacated the hearing on the parties' motions and took them under submission pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 16.) After considering the parties' arguments and the law, the Court

**GRANTS** TAL's Motion to Dismiss and **DENIES AS MOOT** Amergent's Motion to Compel.

## BACKGROUND

Petitioner Amergent is a California corporation with its principal place of business in Long Beach, California. (Petition to Compel Arbitration ("Pet.") ¶ 4, ECF No. 1.) Amergent's CEO, Frank Whipple, resides in San Diego, CA. (*Id.* ¶ 5.) Respondent TAL is a Connecticut corporation with its principal place of business in Greenwich, Connecticut. (*Id.* ¶ 6.)

On or about March 12, 2010, Amergent and TAL entered into a contract (the "Agreement") wherein Amergent agreed to provide certain maritime-related services and assistance to TAL with respect to TAL's obligations (as vessel manager) to ensure regulatory compliance with its vessels. (*Id.* ¶ 7; *see also id.* Ex. A.) The Agreement provided for arbitration of all disputes. (*Id.* ¶ 8.) In 2010, Amergent performed its services under the contract, and now the parties have a dispute over how much is due from TAL to Amergent. (*Id.* ¶¶ 9, 10.)

On November 25, 2015, Amergent commenced an arbitration proceeding against TAL with the Maritime Arbitration Association ("MAA"). (*Id.* ¶ 11.) TAL refused to arbitrate with the MAA and filed a Petition to Compel Arbitration in the United States District Court for the District of Connecticut. (*Id.* ¶¶ 12, 13.) On May 11, 2016, the court dismissed the case, (*id.* ¶ 14, *see also* Ex. B), and Amergent again demanded that TAL proceed with arbitration with the MAA, (*id.* ¶ 15). TAL responded by filing a Petition to Compel Arbitration in the United States District Court for the Southern District of New York on May 12, 2016 (the "New York action"). (*Id.* ¶ 16.) Amergent filed a similar Petition with this Court on the same day. (*See generally id.*)

The Court stayed the instant case pending a ruling on a motion to dismiss filed in the New York action. (ECF No. 9.) On January 12, 2017, the parties informed the Court that the case had been dismissed in New York because the court concluded it did not have personal jurisdiction over Amergent. (ECF No. 10.) Thus, the Court lifted the stay and

directed Amergent to file a petition. Amergent did so on March 6, 2017. (ECF Nos. 11, 12.) TAL responded with a Motion to Dismiss for Lack of Personal Jurisdiction on April 6, 2017. (ECF No. 13.)

**LEGAL STANDARD**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) challenges the Court's personal jurisdiction over a party. The plaintiff bears the burden of establishing that jurisdiction is proper. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). The Court may decide the motion without an evidentiary hearing, and thus "'the plaintiff need only make a prima facie showing of the jurisdictional facts.'" *Id.* (quoting *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 127–28 (9th Cir. 1995)). "Uncontroverted allegations in the plaintiff's complaint must be taken as true," *id.*, and "'[c]onflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor,'" *id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)).

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Schwarzenegger*, 374 F.3d at 800. "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Id.* at 800–01; *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003) (California's long-arm statute "allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution"). Thus, "[f]or a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant—general jurisdiction and specific jurisdiction." *Boschetto*, 539 F.3d at 1016.

**ANALYSIS**

TAL argues that the Court lacks both general and specific jurisdiction over it. (MTD 12[1].) Amergent does not appear to argue that the Court has general jurisdiction over TAL, (*see generally* MTD Opp'n), but does argue that the Court has specific jurisdiction over TAL, (*see generally id.*). The Court thus considers whether it has specific jurisdiction over TAL.

"In order for a court to have specific jurisdiction over a defendant, 'the defendant's suit-related conduct must create a substantial connection with the forum State.'" *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1022–23 (9th Cir. 2017) (quoting *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014)). "The relationship between the defendant and the forum state must arise out of contacts that the defendant [itself] creates with the forum State." *Id.* (internal quotation marks omitted). "Additionally, the requisite 'minimum contacts' must be 'with the forum State itself, not . . . with persons who reside there.'" *Id.* (quoting *Walden*, 134 S. Ct. at 1122).

The Ninth Circuit has established a three-prong test for analyzing a claim of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802; *see also Williams*, 851 F.3d at 1023. The plaintiff bears the burden of establishing the first two prongs. *See Mavrix Photo, Inc. v. Brand Techs.*,

///

---

[1] Pin citations to docketed material refer to the CM/ECF numbers electronically stamped at the top of each page.

*Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011). If the plaintiff does so, the burden shifts to the defendant to argue that exercise of jurisdiction would be unreasonable. *Id.*

"Purposeful availment" and "purposeful direction" are two distinct concepts. *Schwarzenegger*, 374 F.3d at 802. "A purposeful availment analysis is most often used in suits sounding in contract" while a "purposeful direction analysis . . . is most often used in suits sounding in tort." *Id.* (citations omitted). Both parties appear to engage with the purposeful availment analysis, which the Court finds appropriate given that the formation, performance, and terms of the Agreement are central to the underlying dispute.

"To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have 'performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.'" *Boschetto*, 539 F.3d at 1016. The Court's "evaluation of the jurisdictional significance of a defendant's contract or other business in the forum is not rigid and formalistic, but rather practical and pragmatic." *Id.* (quoting, e.g., *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("[W]e have emphasized the need for a highly realistic approach that recognizes that contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.") (internal quotation marks and citation omitted)). In evaluating "the jurisdictional significance of a defendant's contract or other business in the forum," courts are "guided by the Supreme Court's admonition that the formation of a contract with a nonresident defendant is not, standing alone, sufficient to create jurisdiction." *Boschetto*, 539 F.3d at 1017 (citing *Burger King Corp.*, 471 U.S. at 478). To evaluate whether a defendant, through a contract, purposefully established minimum contacts with the forum, courts evaluate the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King Corp.*, 471 U.S. at 479.

Amergent argues that TAL has purposefully availed itself of this forum's jurisdiction. (*See generally* MTD Opp'n.) Specifically, Amergent notes that TAL (1) reached out to Amergent, a California company, to establish this business relationship, (*id.*

at 9–10); (2) directed confidential files to be created and stored in California, (*id.* at 10–11); (3) contemplated that the records kept by Amergent in California might be the subject of a California court order or summons seeking their production, (*id.* at 11); (4) contemplated that services would be performed in California because Amergent was an independent contractor and because TAL did not include compensable travel time in one of its work orders, (*id.* at 12–13); and (5) nearly half of the billed hours were performed in California, (*id.* at 13–14).

This is insufficient to demonstrate that TAL purposefully availed itself of the benefits of this forum. As an initial matter, no party disputes that TAL contacted Amergent in the hopes of establishing a business relationship. While the Court agrees that this weighs in favor of finding specific jurisdiction, it is well established that the formation of a contract alone is not sufficient to establish sufficient minimum contacts with the forum state. *See, e.g.*, *Burger King Corp.*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot." (emphasis in original)). Even Amergent concedes that the "fact that TAL initiated the relationship is not dispositive" of the question.[2] (MTD Opp'n 10.)

---

[2] Amergent's reliance on *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220 (1957), and *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th. Cir. 2006), for the proposition that a single act may support personal jurisdiction over a nonresident is misplaced. (MTD Opp'n 10.) In *Yahoo!*, the Ninth Circuit applied the "effects test" typically used in purposeful direction cases concerning tortious acts aimed at state residents from outside the forum state. 433 F.3d at 1209. As discussed, both parties agree, and the Court finds, that a purposeful availment analysis, not a purposeful direction analysis, is appropriate in this case given the contractual nature of the dispute. *McGee* is also distinguishable. There the Supreme Court found that California had personal jurisdiction over an out-of-state insurance company because, among other things, the very nature of a life insurance contract contemplated a long-term relationship between the insured and the insurer. 355 U.S. at 223–24 (finding that there was a "substantial connection" with the state where, among other things, the "contract was delivered in California, the premiums were mailed from there and the insured was a resident of that State when he died"). As discussed more fully below, the Court finds that the Agreement—and the entire course of dealings between the parties—falls markedly short of the typical relationship established by a life insurance contract that would likely give rise to a finding of purposeful availment.

Nor are Amergent's remaining arguments persuasive. Amergent claims that TAL directed confidential files to be created and stored at Amergent's California office. (MTD Opp'n 10–11 (citing a letter from TAL's attorneys).) But that is not true. TAL admits that it sent Amergent a letter containing standard language regarding the creation and retention of confidential materials—which eventually formed part of the Agreement—but this language makes no reference to California or specifically mandates, as Amergent suggests, that such materials were to be housed in Amergent's California offices. (*See* MTD Reply 5 (citing Kjaernested Decl. Ex. 2, ECF No. 13-4).) Nor is the Court convinced that the mere creation and housing of these confidential documents is sufficient to "create a <u>substantial</u> connection with the forum State." *Williams*, 851 F.3d at 1022–23 (emphasis added). Amergent's argument that TAL contemplated being hailed into a California court to protect its confidential files similarly fails because the contract language makes no mention of the courts of any specific jurisdiction, much less California. (*See* MTD Opp'n 11; *see also* Kjaernested Decl. Ex. 2.) To the contrary, the confidentiality clause imposes procedures to be followed upon service of "<u>any</u> process, such as an administrative summons or court order, to produce the work product, records or document." (*Id.* (emphasis added).)

Furthermore, Amergent's independent contractor status, giving it "the ultimate responsibility and control over the details and means of providing the services," (Kjaernested Decl. Ex. 1, ¶ 14), does not grant it the ability to unilaterally create personal jurisdiction over TAL in California by performing some of its work here, or any jurisdiction for that matter.[3] Taken to its logical extreme, Amergent's argument would allow any independent contractor who sufficiently controls the manner and means of her services the ability to establish personal jurisdiction in any state she wishes to perform her services. Nor does Amergent cite any authority to support this proposition. To the contrary, it is well settled that no party can unilaterally act to subject another party to personal jurisdiction in

---

[3] To be sure, as discussed below, the fact that Amergent actually performed work for TAL in California is a factor weighing in favor of a finding of specific jurisdiction. But Amergent's status as an independent contractor has no bearing on its weight.

7

its chosen forum. *See, e.g.*, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."); *Aurora Corp. of America v. Michlin Prosperity Co. Ltd.*, 2015 WL 5768340, at *5 (C.D. Cal. Sept. 29, 2015) ("A purposeful availment analysis considers whether the defendant's contacts with the forum are attributable to his own actions or are solely the actions of the plaintiff") (internal quotations omitted).)

Nor does Amergent's lack of compensable travel time argument significantly bolster its position. Specifically, Amergent argues that because one of its work authorization forms did not include compensable travel time, TAL required—or at the very least knew—that such work would be completed in California. (MTD Opp'n 12–13.) Unless inadvertent, this might lend some support to the argument that TAL was aware Amergent would perform some of its duties at its California offices. But TAL's apparent failure to check a box including compensable travel time does not demonstrate TAL's intention that all of the work would be completed at Amergent's California offices. To the contrary, Amergent apparently ignores the full description of the work approved by that work authorization form specifically contemplating "on-scene" assistance with the vessel "M/V/ BAFFIN STRAIT in Wilmington, N.C." (MTD Reply 7 (citing Kjaernested Decl. Ex. 3, ECF No. 13-5).)

In sum, Amergent's core argument seems to be that the outsider TAL solicited and received services from a California company and should now be held accountable in California courts. The Court understands—and all parties agree—that TAL reached out to Amergent and, as a result of their arrangement, Amergent performed work for TAL at its offices in California. And at this juncture the Court accepts Amergent's disputed declaration that a significant amount of work on the contract for domestic services was completed at Amergent's California offices. (*See* MTD Opp'n 14; *see also* Whipple Decl. ¶ 2, ECF No. 14-1 (declaring that 581.5 hours of the 1022.5 domestic hours were performed

in Amergent's California offices).) But this alone is insufficient to confer personal jurisdiction over TAL. *See, e.g.*, *Aurora Corp.*, 2015 WL 5768340, at *8 ("The mere fact that Defendant opted to participate in a business relationship with Plaintiff knowing that Plaintiff had an office in California is insufficient to create minimum contacts."). Rather, the Court must consider the totality of the circumstances, including "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King Corp.*, 471 U.S. at 479.

With these factors in mind, the Court finds that TAL did not purposefully avail itself of the benefits of this forum. As TAL explains, this was a one-off contract for a short-term, discrete project to service ships outside of California.[4] (MTD Reply 9 (citing Kjaernested Decl. ¶¶ 9–10, 15–17).) Indeed, Amergent does not dispute TAL's contention that Amergent performed a significant amount of work outside California and that "the focus of the contract between [the parties] concerned events outside of California. Specifically, [TAL] sought Amergent's on-site assistance in bringing into compliance with Coast Guard regulations vessels located at places outside of California." (*Id.* at 4.); *cf. Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir. 1991) (finding that a contract was not a "one-shot deal" where "most of the future of the contract would have centered on the forum").

Furthermore, Amergent does not dispute TAL's evidence that the parties engaged in minimal negotiations before entering into the Agreement. (MTD Reply 4; *see also* MTD 22 (noting that the parties negotiated for no more than one day before Amergent began work on the project).); *cf. Burger King Corp.*, 471 U.S. at 485 (affirming personal jurisdiction where the defendant, among other things, negotiated with the plaintiff for five months over the terms of the franchise and lease agreement). And the Agreement contains a Connecticut choice of law clause, (Kjaernested Decl. Ex. 1 ¶ 17, ECF No. 13-3), which weighs in favor of finding that TAL did not purposefully avail itself of the benefits of this

---

[4] Amergent claims that TAL engaged in "an open-ended business relationship" with it, (MTD Opp'n 18), but provides no evidence to support that claim.

forum. *See, e.g.*, *CTG Int'l (N. Am.), Inc. v. Fiberglass Indus., Inc.*, No. CV 14-6730 RSWL VBKX, 2015 WL 1565428, at *5 (C.D. Cal. Apr. 6, 2015) ("While a forum selection clause is 'insufficient to confer jurisdiction' in and of itself, *Burger King*, 471 U.S. at 482, in this case, it reinforces the parties' intention to litigate in Indiana, where Plaintiff is headquartered.").

Based on the totality of the parties' dealings, the Court finds that TAL has not purposefully availed itself of the benefits of this forum.[5] *Cf. CTG*, 2015 WL 1565428, at *4–5 (finding no personal jurisdiction where, among other things, the defendants initiated contact with a California company and submitted over fifty purchase orders to Plaintiff at its California offices over the course of three years for roughly $2,000,000 worth of merchandise). Accordingly, the Court **GRANTS** TAL's Motion to Dismiss.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** TAL's Motion to Dismiss Petition to Compel Arbitration for Lack of Personal Jurisdiction (ECF No. 13). Thus the Court **DENIES AS MOOT** Amergent's Motion to Compel Arbitration (ECF No. 12). This Order ends the litigation in this matter. The Clerk of Court **SHALL** close the file.

**IT IS SO ORDERED.**

Dated: August 4, 2017

Hon. Janis L. Sammartino
United States District Judge

---

[5] For this reason the Court does not reach the remaining factors to determine whether it has specific jurisdiction over TAL.